IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 7, 2012

## STATE OF TENNESSEE v. ROBERT JESUS PORRATA

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 09-00597, 09-00598, 09-00599      J. Robert Carter, Jr., Judge**

_____

**No. W2011-00749-CCA-R3-CD  - Filed October 22, 2012**

_____

Defendant, Robert Jesus Porrata, pled guilty to attempted second degree murder, attempted aggravated robbery, and employing a weapon during a felony in Case No. 09-00597 involving victim Cliff Belue.  In Case No. 09-00598, he pled guilty to aggravated robbery involving victim Reginald Bean, and he pled guilty to attempted aggravated robbery in Case No. 09-00599 involving victim Ray Heath. In Case No. 09-00597, Defendant was sentenced to ten years for attempted second degree murder, four years for attempted aggravated robbery, to run concurrently, and six years for use of a firearm in a felony, to run consecutively for an effective sixteen-year sentence.  In Case No. 09-00598, the trial court imposed a ten-year sentence, and the trial court imposed a four-year sentence in Case No. 09-00599.   The sentences in 09-00597, 09-00598, and 09-00599 were ordered to run consecutively for an effective thirty-year sentence in confinement.  On appeal, Defendant argues that the trial court improperly sentenced him.  After a thorough review, we affirm judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Charles Edgar Waldman, Memphis, Tennessee, for the appellant, Robert Jesus Porrata.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; Michael McCusker, Assistant District Attorney General; and Muriel Malone, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

*Guilty Plea Submission Hearing*

According to the State's recitation of the facts at the guilty plea submission hearing:

Had these matters proceeded to trial, beginning with 597, the State of Tennessee would have produced evidence on this indictment that on August 25, 2008 in the early morning hours of the day Mr. Clifford Blue [sic] was running a landscaping business in the Chickasaw Gardens area of town when [Defendant] and his co-defendant Erin [sic] Dickerson approached Mr. Blue [sic]. Mr. Blue [sic] was held at gunpoint by [Defendant]. Mr. Dickerson went through his pockets. As they were leaving - - the State alleges as they were leaving, [Defendant] turned and fired a single shot striking Mr. Blue [sic]. He did employ a firearm during this felony. Also, they did not get anything from Mr. Blue [sic] so it was an attempted agg[ravated] robbery.

On the indictment ending 598, the State would [have] shown that on August 23rd, 2008 they approached Reginald Bean also engaged in the business of lawn care. Using that same modus operandia [sic], on that date they did approach Mr. Bean. He was held at gunpoint and they went through his pockets. In Mr. Bean's case they did take property from him leading to the indictment of aggravated robbery.

On the third indictment ending 599, the State of Tennessee would [have] shown on August 25th, 2008 a few hours after the incident under Indictment 597, that [Defendant] and his co-defendant Erin [sic] Dickerson, did approach a Mr. Ray Heath, just a property owner out in the county who was working in his yard. They approached Mr. Heath and they did hold him at gunpoint and go through his pockets. However, no property was taken giving rise to the indictment of criminal attempt aggravated robbery.

*Sentencing Hearing*

Clifford Belue testified that he was working a landscaping job at 48 East Chickasaw in Shelby County on August 25, 2008, when he saw Defendant and "his partner" looking at Mr. Belue's equipment. He said:

And I first thought they were going to try and grab a blower or something and run. We've had that happen in the past. Well, they approached the corner, walked around. This lady has two driveways, one on each side. Well, once they cleared the second driveway, I thought, well, they're not going to grab nothing and run. They're gone. Turned around and continued to blow and when I turned back around, [Defendant] was on me with his gun and they wanted my wallet. They was real aggressive.

Mr. Belue testified that Defendant's finger was on the trigger at the time, and the trigger was "halfway pulled." He told Defendant and Mr. Dickerson that he did not have any money in his wallet and that he would not give them his wallet. He thought that one of his co-workers, who was nearby, would distract Defendant, but that did not happen. Defendant then threatened to "blow [Mr. Belue's] brains out." Mr. Belue testified that he told Defendant that he would go to jail for a long time if he shot Mr. Belue, and they argued back and forth. Defendant then told Mr. Dickerson to reach in Mr. Belue's pocket. When Mr. Belue would not allow Mr. Dickerson to reach into his pocket, Mr. Dickerson punched him in the face. Mr. Belue testified that he dropped the leaf blower that was on his back, and argued with Defendant and Mr. Dickerson "for about a second or so there, and they took off running." Defendant then turned around and shot Mr. Belue in the groin area. Mr. Belue testified that Defendant seemed to be in charge of the situation.

Mr. Belue testified that as a result of the gunshot, he had exploratory surgery and was in the hospital for five days. He said that the bullet missed his main artery by a millimeter, and he would probably lose his right testicle. Mr. Belue testified that he was told Defendant was in a gang so he obtained a handgun permit because he had to "watch [his] back" because he feared there would be retaliation. He said that his mother and fifteen-year-old daughter have had emotional issues as a result of the offenses. Mr. Belue testified that Defendant intentionally shot him, and he said that Defendant had the opportunity to walk away without shooting him.

Defendant testified that he was twenty years old at the time of the offenses. He described the robberies as a "dare that went wrong." At the time, he had been in the military at Fort Benning and Fort Lee for a year and was home on leave. Concerning the offenses, Defendant said:

Well, I came back to see my family and my friends, right. And, you know, we got to talking. Everybody joking and laughing. You went to the military. And so they wanted to see if I was still the same - - if I was still, you know what I'm saying, the same friend they knew before I left. They figured that, you

know what I'm saying, I changed. They was trying to just see if I - - would do it and did I have the courage to do it.

Defendant testified that the military taught him to "accept challenges." He said: "They teach you going in to try to overcome obstacles. They just - - they just teach you to go in there and try to have heart and courage." Defendant testified that he was showing his friends, "[h]ow brave [he] was." Defendant said that he did not intend to harm anyone and that he "fell for the nagging and pressure."

Defendant admitted that he pointed the gun at Mr. Belue when he first walked up. He admitted that he had been trained by the military on how to handle a weapon. Defendant said that the weapon was a "ragged gun" he got "from off the street" and that it discharged as he ran away. He said that his finger was on the outside of the trigger at the time and not wrapped around it. Defendant testified that although he had loaded the gun, he did not intend to fire it. He said, "I was just running, and it went off." Defendant admitted that in the military, he had been taught to keep his weapon "aimed away from anyone just in case [an] accidental discharge happens."

Defendant testified that he did not say anything to Mr. Belue when he and Mr. Dickerson walked up, but he did say something to Mr. Dickerson about reaching into Mr. Belue's pocket. He denied threatening to blow Mr. Belue's head off. Defendant testified that he was not in a gang and that he did not know of any threats of retaliation against Mr. Belue or his family.

Regarding the crimes in his other two cases, Defendant said that he was "just there" and did not have a weapon or do anything. He said that Mr. Dickerson did something to the elderly victim in one of the cases. Defendant could not remember anything about the other incident. He said that he was not thinking and was "sick under stress and pressure" because his two-year-old son accidently set Defendant's mother's house on fire and destroyed everything. Defendant told the court that he was remorseful and sorry for what he did to Mr. Belue.

**II. Analysis**

*Sentencing*

Defendant contends that the trial court erred in applying certain enhancement factors to his sentences and that the trial court erred in ordering consecutive sentencing. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. *See* T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see*

-4-

*also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). Previously, our review of a defendant's challenge to the length, range, or manner of service of a sentence was de novo with a presumption of correctness. However, our Supreme Court recently adopted a new standard of review for sentencing in light of the 2005 changes in Tennessee sentencing law. *State v. Bise*, _____ S.W.3d _____, 2012 WL 4380564 (Tenn. Sept. 26, 2012). In *Bise*, the Court concluded:

> In summary, the 2005 amendments to the 1989 Act were intended to bring our sentencing scheme in line with the decisions of the United States Supreme Court in this area. Accordingly, when the 2005 amendments vested the trial court with broad discretionary authority in the imposition of sentences, de novo appellate review and the "presumption of correctness" ceased to be relevant. Instead, sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness."

*Bise*, _____ S.W.3d _____, 2012 WL 4380564 at *19. Accordingly, we now review a defendant's challenge to the sentence imposed by the trial court under an abuse of discretion standard with a "presumption of reasonableness." *Id*.

Tennessee's sentencing act provides:

(c)     The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1)     The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2)     The sentence length within the range should be adjusted, as appropriate by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c)(1)-(2).

In conducting a review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); *see also State v. Carter*, 254 S.W.3d 335, 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

A trial court is mandated by the Sentencing Act to "impose a sentence within the range of punishment." T.C.A. § 40-35-210(c). A trial court, however, "is no longer required to begin with a presumptive sentence subject to increase and decrease on the basis of enhancement and mitigating factors." *Carter*, 254 S.W.3d at 346. Therefore, an appellate court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections-102 and-103 of the Sentencing Act." *Id*.

A trial court's "fail[ure] to appropriately adjust" a sentence in light of applicable, but merely advisory, mitigating or enhancement factors, is no longer an appropriate issue for appellate review. *Id*., 254 S.W.3d at 345 (citing *State v. Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007) (noting that "[t]he 2005 amendment [to the Sentencing Act] deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered the enhancement and mitigating factors merely advisory, not binding, on the trial courts").

In Case No. 09-00597, Defendant was convicted of attempted second degree murder (count one), a Class B felony; attempted aggravated robbery (count two), a Class C felony; and employing a weapon during a felony (count three), a Class C felony. As a Range I offender, he was subject to a sentence between eight to twelve years for count one and three to six years for count two. Tenn. Code Ann. § 40-35-112 (a)(2) and (3). He was subject to a mandatory six-year sentence for count three. Tenn. Code Ann. § 39-17-1324 (b)(1) and (h)(1). In Case No. 09-00598, Defendant was convicted of aggravated robbery, a Class B felony, and was subject to a sentence between eight to twelve years. He was convicted of attempted aggravated robbery, a Class C felony, and was subject to a sentence between three and six years in Case No. 09-00599. The trial court applied the following enhancement factors to Case No. 09-00597: the Defendant was the leader in the commission of an offense involving two or more criminal actors; the personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great; and the

defendant had no hesitation about committing a crime when the risk to human life was high. Tenn.Code Ann. § 40-35-114 (2),(6), and (10). We point out that these factors do not apply to the sentence for count three (employing a weapon during a felony), as Defendant received a mandatory six-year sentence for that count.

In Case Nos. 09-00598 and 09-00599, the trial court applied the following factors: the Defendant was the leader in the commission of an offense involving two or more criminal actors; the defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense; and the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn.Code Ann. § 40-35-114 (2),(9), and (10).

First, Defendant argues that the trial court erred in finding enhancement factor (2) that he was the leader in the commission of the offenses. As pointed out by the State, the trial court accredited Mr. Belue's testimony that Defendant told co-defendant Dickerson to reach into Mr. Belue's pocket, and Mr. Belue testified that Defendant seemed to be in charge of the situation. In the stipulation of facts at the guilty plea submission hearing, the State told the trial court that using the same modus operandi, Defendant and Mr. Dickerson approached Mr. Bean, who was held at gunpoint, and they went through his pockets. The same occurred with victim Ray Heath. Therefore, the trial court properly applied this factor.

Defendant next argues that the trial court erred in applying enhancement factor (9) regarding the use of a firearm during the commission of the offenses. The record shows that the trial court only applied this factor in Case Nos. 09-00598 and 09-00599. This Court has held that factor (9) does not apply to convictions for aggravated robbery when based on the use of a weapon in the commission of the crimes because use of a firearm is an essential element of the offenses. *See State v. Nix*, 922 S.W.2d 894, 903-04 (Tenn. Crim. App. 1995); *State v. Harry Jamieson*, W2001-02449-CCA-R3-CD, 2002 WL 31786470, at *11 (Tenn. Crim. App. Dec. 13, 2002). Since the convictions in these cases appear to be based on the use of a deadly weapon, the trial court improperly applied this factor.

Finally, Defendant argues that the trial court erred in applying factor (10), a high risk to human life, to all of his cases. Although factor (10) is inherent in every homicide or attempted homicide and in convictions for aggravated robbery when based upon the use of a deadly weapon, it may appropriately applied when there is a risk to the life of someone other than the victim. *Harry Jamieson*, 2002 WL 31786470 at *11; *State v. Kelly*, 34 S.W.3d 471, 480 (Tenn. Crim. App. 2000) ; *State v. Lawrence Brown*, No. M2011-01156-CCA-R3-CD, 2012 WL 2870572, at *5 (Tenn. Crim. App. July 13, 2012); *State v. Myron McNeal*, No. W2010-01130-CCA-R3-CD, 2012 WL 543054, at *4 (Tenn. Crim. App. Feb. 16, 2012). In Case No. 09-00597, Mr. Belue testified that he was working in a residential area and that one

of his co-workers was nearby when Defendant attempted to rob and when he shot Mr. Belue. This factor was properly applied. However, in Case Nos. 09-00598 and 09-00599, we find that there was no testimony concerning a risk to human life other than the victim. Therefore, the trial court erred in applying this factor to cases 09-00598 and 09-00599.

We note that any argument about the weight assigned by the trial court to the enhancement and mitigating factors is no longer grounds for appeal. *Carter*, 254 S.W.3d at 344. The record clearly shows that the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration to the principles that are relevant to sentencing. Based on our review, we conclude that the applicable enhancement factors considered by the trial court adequately supported the trial court's discretionary decision to impose a sentence of ten years for attempted second degree murder, four years for attempted aggravated robbery, and six years for use of a firearm in a felony in Case No. 09-00597, ten years for aggravated robbery in Case No. 09-00598, and four years for attempted aggravated robbery in Case No. 09-00599. *Carter*, 254 S.W.3d at 344-45; *See also State v. Banks*, 271 S.W.3d 90 (Tenn. 2008). Furthermore, the following from *Bise* is applicable to this issue:

> We hold, therefore, that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

*Bise*, _____ S.W.3d _____, 2012 WL 4380564 at *17. Defendant is not entitled to relief on this issue.

*Consecutive Sentencing*

Defendant argues that the trial court erred in finding him to be a dangerous offender and by imposing consecutive sentences. A trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence that any of the following factors are applicable:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b); *See also State v. Imfeld,* 70 S.W.3d 698, 708 (Tenn. 2002). The length of the sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." Tenn.Code Ann. § 40-35-102(1), 103(2). Unless mandated by statute or rule, the determination of whether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court. *State v. Hastings,* 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

In this case, the trial court found that consecutive sentencing was appropriate based on a finding that Defendant was a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. In the event that the trial court finds the defendant is a "dangerous offender," it must also determine what has generally become referred to as the "*Wilkerson* factors," that is whether the consecutive sentences: (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with the general principles of sentencing. *State v. Wilkerson,* 905 S.W.2d 933, 939 (Tenn. 1995). In this case, the trial court made the following findings:

There was no hesitancy about committing a series of crimes in which the risk to human life were high. I think the circumstances surrounding the commission of the offenses were particularly aggravated, in that, it was a group of young men who are riding around looking for individuals.

The current theme seems to be all of them were doing yard work of various sorts. So we have individuals who are out toiling either for money or for just, you know, pride of ownership or occupantcyship (phonetically) [sic] of property. Those people were chosen to be robbed at gunpoint. I find that a confinement for an extended period of time is necessary to protect society from the defendant's unwillingness to lead a productive life.

This is an individual who not only had the tools, who had completed a significant amount of the training that would allow him to be not only a productive but an honorable member of our society. He had the advantages. He had the training. And he had the tools that he did not have to resort to this. And I find that to run these consecutively the aggregate length of these sentences reasonably relates to the offenses that he's convicted for.

After a review of the record, we conclude that the trial court's finding that Defendant is a dangerous offender who exhibits little regard for human life and has no hesitation about committing a crime in which the risk to human life is high is amply supported by the record. In each of the three cases, Defendant and his co-defendant used a gun to commit offenses over a three-day period, in three areas of Shelby County, against three unarmed individuals, one of whom was seventy-four years old. In the case of Mr. Belue, he told Defendant and Mr. Dickerson that he did not have any money in his wallet and that he would not give them his wallet. Defendant then threatened to "blow [Mr. Belue's] brains out." Defendant then told Mr. Dickerson to reach in Mr. Belue's pocket. When Mr. Belue would not allow Mr. Dickerson to reach into his pocket, Mr. Dickerson punched him in the face. As Defendant ran away from the scene, he turned around and shot Mr. Belue in the groin area. Mr. Belue testified that as a result of the gunshot, he had exploratory surgery and was in the hospital for five days. He said that the bullet missed his main artery by a millimeter, and he would probably lose his right testicle. Mr. Belue also obtained a handgun permit because he thought that Defendant was in a gang, and he feared retaliation. He said that his mother and fifteen-year-old daughter have had emotional issues as a result of the offenses. Mr. Belue testified that Defendant intentionally shot him, and he said that Defendant had the opportunity to walk away without shooting him. He also testified that Defendant seemed to be in charge of the situation. Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.


_____
THOMAS T. WOODALL, JUDGE